IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAZARIAN INTERNATIONAL<br>FINANCIAL ASSOCIATES, L.L.C.,<br>   20 Dunes Row<br>   Amelia Island, FL  32034,<br><br>      Plaintiff,<br><br>v.<br><br>DESARROLLOS AEROHOTELCO, C.A.,<br>   Calle Tamanano, Cruce con Mohedano<br>   Edif. Atlantic, Piso 4, Ofic. 4-a el Rosal<br>   Caracas 1061<br>   Venezuela<br><br>   Caracas, Venezuela<br><br>      Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Bazarian International Financial Associates, L.L.C. ("Plaintiff" or "BI"), by and through its undersigned counsel for its Complaint against Desarrollos Aerohotel Co., C.A. alleges as follows:

### PARTIES

1. BI is a Florida limited liability company doing business in the District of Columbia. BI is in the business of providing investment banking services.

2. Defendant Desarrollos Aerohotelco, C.A. is a Venezuelan company with its principal place of business in Caracas, Venezuela. Defendant is in the business of developing and owning hotels.

## JURISDICTION AND VENUE

3.   This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as an action between a citizen of the United States and a citizen of a foreign state wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.   There exists an actual case or controversy between the parties. At issue is a real and substantial controversy between Plaintiff and Defendant, having adverse interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5.   Defendant has contractually agreed to personal jurisdiction in this Court.

6.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(3) as a judicial district in which the defendant is subject to personal jurisdiction, and pursuant to 28 U.S.C. § 1391(d), which provides that "[a]n alien may be sued in any district."

## BACKGROUND AND GENERAL ALLEGATIONS

7.   In 2003, BI was granted an option from the Government of Aruba to lease land on Palm Beach, Aruba, for the purpose of establishing and developing a luxury resort (the "Palm Beach Option").

8.   BI approached Ritz Carlton Hotels ("Ritz Carlton") to manage the luxury resort.

9.   In or about late-2006, while BI and Ritz Carlton were negotiating the possible sale of the Palm Beach Option, Ritz Carlton introduced BI to Defendant.

10.   BI and Ritz Carlton were ultimately unable to consumate sale of the option which had been successfully renewed on several prior occasions and it expired by its own terms at the end of 2006.

11. The Government of Aruba subsequently re-opened bids for the Palm Beach Option.

12. Defendant retained BI to assist with its bid for the Palm Beach Option and to arrange for funding for the Project. The parties' duties and obligations were memorialized in an agreement dated February 5, 2007. A copy of that agreement is attached hereto as Exhibit "A" and is incorporated herein by this reference.

13. Under the Agreement, Defendant engaged BI "to perform exclusive investment banking services in connection with the development of a luxury hotel and fractional resort located on Palm Beach on the island of Aruba . . . referred to as the 'Project.'"

14. Defendant agreed to pay BI US$70,000 (net of certain costs and expenses) upon execution of the Agreement.

15. Defendant also agreed to pay BI an additional US$70,000 (net of certain costs and expenses) upon being awarded the Palm Beach Option.

16. Defendant also agreed that BI would become entitled to an investment banking fee upon settlement of a binding loan and/or guarantee commitments given in connection with the Project that was obtained directly or indirectly by BI:

> Upon settlement of binding loan and/or guarantee commitments for the Project obtained directly or indirectly by Bazarian International, Bazarian International will be entitled to receive investment banking fees from [Defendant] based upon the amount of financing arranged for the Project as well as any contributions in kind to the Project. The debt fee will be based on a flat two percent (2%) of the gross amount of the debt financing provided to the Project, net VAT and all wiring/bank fees, except for Scotiabank at one percent (1%) of the gross amount of debt financing.

17. Defendant further agreed to pay BI the investment banking fees "if the financing for the Project is concluded within thirty-six (36) months following the termination of this Agreement from sources introduced to the Project by BI."

18. Payment of the investment banking fees becomes due "upon the earlier of the first draw-down of funds and/or first infusion of equity capital, provided that financing has been committed to the Project as a result of the efforts of BI."

19. The Agreement also provides that it is to "become part of the relevant loan documents, management agreements, joint-venture agreements, guaranty agreement, bridge loan facilities and Memorandum of Association for the Project amongst and between the equity shareholders and lenders."

20. Under the Agreement, the prevailing party in an action to enforce or interpret its terms is "entitled to full reimbursement of its costs and expenses in connection therewith from the non-prevailing party, including attorney's fees."

21. Upon execution of the Agreement, Defendant paid BI the first installment of US$70,000.

22. In or about early-2008, the Government of Aruba awarded the Palm Beach Option to Defendant. Although payment was delayed, Defendant paid BI the US$70,000 (net) option award payment called for by the Agreement in June 2009.

23. In or about December 2006 and January 2007, BI introduced Defendant to key executives and decision-makers at Scotiabank to begin the process of obtaining financing for the Project.

24. During the same time period, BI introduced Defendant to key executives and decision-makers at AIB Bank to further the process of obtaining financing for the Project.

25. Over the course of the next several months, BI worked with Defendant to coordinate the financing process with Scotiabank and with AIB Bank.

26.     Defendant ultimately elected not to proceed with Scotiabank, but continued to pursue financing from and through AIB Bank. BI obtained an Indicative Term Sheet from AIB Bank for Defendant as of March 26, 2007 setting forth a total facility amount of $170 million USD.

27.     Upon information and belief, AIB Bank is leading a syndicate to provide total project financing with an anticipated closing within the next sixty days.

28.     Nevertheless, in or about June 2009, Defendant informed BI in writing that it had no intention of paying the investment banking fees specified in the Agreement for Project financing coming from AIB Bank. Defendant wrongfully asserts that BI had no role in facilitating its relationship with AIB Bank.

REQUEST FOR DECLARATORY JUDGMENT

29.     Plaintiff hereby incorporates the allegations contained in paragraph 1 through 28 hereof as though fully set forth herein.

30.     There exists an actual, substantial and justiciable controversy which arises out of Defendant's refusal to acknowledge BI's role in introducing Defendant to AIB Bank and its follow on efforts to obtain AIB Bank's commitment to provide Project financing.

31.     Defendant further disputes that, by virtue of BI's role in introducing Defendant to AIB Bank and efforts to obtain AIB Bank's commitment to provide Project financing, BI is entitled to the investment banking fees called for under the Agreement upon settlement of binding loan and/or guarantee commitments for the Project from AIB Bank.

32.     In truth and in fact, BI has met all conditions relevant to entitlement to the investment banking fees called for by the Agreement and has otherwise abided by all the terms and conditions of the Agreement.

33.     BI is entitled to a declaratory judgment that, by virtue of BI's role in introducing Defendant to AIB Bank and efforts to obtain AIB Bank's commitment to provide Project financing, BI is entitled to the investment banking fees called for under the Agreement upon settlement of binding loan and/or guarantee commitments for the Project from AIB Bank.

WHEREFORE, BI prays for judgment as follows:

A.    For a declaration that, by virtue of BI's role in introducing Defendant to AIB Bank and efforts to obtain AIB Bank's commitment to provide Project financing, BI is entitled to the investment banking fees called for under the Agreement upon settlement of binding loan and/or guarantee commitments for the Project from AIB Bank;

B.    Awarding attorney's fees as provided by the Agreement;

C.    Awarding costs; and

D.    For such other and further relief as the Court deems appropriate.

THOMPSON HINE LLP

Dated: September 17, 2009     By: _____
Kip Schwartz, Esq. (D.C. Bar #444650)
C. Dennis Southard IV (D.C. Bar # 448190)
1920 N. Street, N.W., Suite 800
Washington, D.C. 20036
Telephone - (202) 331-8800
Facsimile – (202) 331-8330

Counsel for Plaintiff

# Exhibit A

# AGREEMENT

This AGREEMENT is entered into this 5th day of February, 2007 by and among BAZARIAN INTERNATIONAL FINANCIAL ASSOCIATES, L.L.C., a Florida Limited Liability Company with its principal place of business in Washington, D.C. ("Bazarian International") and Desarrollos Aerohotelco, C.A., Venezuelan company with its principal place of business in Caracas, Venezuela ("Company") and/or its successor companies or any related entities which intend to invest in and/or develop the Project, as hereinafter defined.

WHEREAS, Bazarian International desires to provide investment banking services to Company;

WHEREAS, Company desires to retain Bazarian International for the purpose of providing investment banking services to the Company;

WHEREAS, Bazarian International and Company desire to set forth their mutual understanding and agreement as to the terms and conditions under which Bazarian International will provide investment banking services to the Company.

NOW, THEREFORE, in consideration of the premises and the respective agreements hereinafter set forth, the parties hereto agree as follows:

1. The Company hereby engages Bazarian International to perform exclusive investment banking services in connection with RFP process and development of a luxury hotel and fractional resort located on Palm Beach on the island Aruba, hereinafter referred to as the "Project." Specifically, Bazarian International will perform the following additional services:

    A. <u>Documentation and Due Diligence</u>: Bazarian International will provide exclusively to the Company with all of the due diligence materials including the CPP Wind Study, Edminsten Environmental Impact Study, and KPMG Social Economic Impact Study, it has collected regarding the Project with the exception of designs and drawings prepared by Robert M. Coleman & Partners Architects.

    B. <u>Advisory during the RFP Process</u>: Bazarian International will guide the Company through the tender being undertaken by the Government of Aruba to award an option to obtain a leasehold interest in the Basi Ruti-Hadicurari development site (the "Option").

    C. <u>Financial Structuring</u>: Bazarian International will structure the financial package for the Project and prepare an self-contained Information Memorandum, including total project costs, proper debt/equity ratios, and projected investor returns. In addition, Bazarian International will perform all necessary financial analysis and assemble all necessary credit information for the sponsors and/or equity participants as may be required by financial institutions.

    D. <u>Investment Banking Services</u>: Bazarian International will act as the Company's exclusive advisor and investment banker in working with financial institutions, investors, and funding sources to raise the debt financing for the Company. This will include, but will not be limited to, working with commercial banking institutions, private lending institutions, and private equity investors which may contribute positively to the Project. Bazarian International will conduct

negotiations with these entities to secure, on a best efforts basis, financing for the Project.

2. As compensation for Bazarian International services, the Company will pay or cause to be paid to Bazarian International remuneration and reimbursement as follows:

   A. Bazarian International will guide the Company through the government tendering process, assisting in it preparing RFP materials and making available all studies that Bazarian International has commissioned during its previous involvement with the Project (as set forth previously in Section 1.A. and 1.B.) In return, Bazarian International will receive a payment of USD 70,000 ("Up Front RFP Payment") upon execution of this Agreement, net of VAT and all wiring/bank fees, plus the monthly retainer as presented in Section 2.B. below. In addition to the Up Front RFP Payment, Bazarian International will also be entitled to a second payment of USD 70,000, net of VAT and all wiring/bank fees, upon the decision of the Government of Aruba to award the Option to the Company ("Additional RFP Payment"). Should the Company be awarded the Option and decide not to execute the Option documentation for any reason, the Additional RFP Payment shall still apply, however should the Company be unsuccessful in its bid for the Option, the Additional RFP Payment shall not apply.

   B. Bazarian International proposes to receive the financial commitments within eight weeks from date of this Agreement with cooperation of the Company. For its time and effort in advising the Company during the RFP process as well as in seeking and arranging the financing for the Project, Bazarian International will receive a monthly retainer (not to exceed six months) of USD 10,000 net of VAT and all wiring/bank fees, payable in equal monthly installments effective on the date of this Agreement. Out-of-pocket expenses such as feasibility studies, travel, facsimile, telephone, telex, printing, etc. will be reimbursed to Bazarian International. Any expense over U.S. $5,000 will require the prior approval of the Company. If Bazarian International is successful in arranging financial commitments, the Company, at its sole discretion, may continue the retainer and secure Bazarian International's services until loan closing and/or disbursements

   C. Upon settlement of binding loan and/or guarantee commitments for the Project obtained directly or indirectly by Bazarian International, Bazarian International will be entitled to receive investment banking fees from the Company based upon the amount of financing arranged for the Project as well as any contributions in kind to the Project. The debt fee will be based on a flat two percent (2%) of the gross amount of the debt financing provided to the Project, net of VAT and all wiring/bank fees, except for Scotiabank at one percent (1%) of the gross amount of the debt financing.

   The fee for any mezzanine debt, subordinated debt or preferred equity raised by Bazarian International will be a flat five percent (5%) of the amount of the financial participation, net of VAT and all wiring/bank fees.

   D. The investment banking fee(s) described in Paragraph 2.C. above are due and will become payable only upon the earlier of the first draw-down of funds and/or first infusion of equity capital, provided that financing has been

committed to the Project as a result of the efforts of Bazarian International,

    E. In the event the Company chooses not to proceed with the project or draw down the financing referred to herefor in Section 2.C. after a fully executed commitment has been extended to the Project, Bazarian International will receive from the company a "drop-dead" fee of .5% (one-half percent), net of VAT and all wiring/bank fees, of the respective net committed amount for its success in securing the financing.

3. The Agreement will immediately become part of the relevant loan documents, management agreements, joint-venture agreements, guaranty agreements, bridge loan facilities and Memorandum of Association for this Project amongst and between the equity shareholders and lenders. This Agreement will take effect as per Paragraph 2 above. Bazarian International will still be entitled to the investment banking fees provided in Paragraph 2.C. if the financing for the Project is concluded within thirty-six (36) months following the termination of this Agreement from sources introduced to the Project by Bazarian International.

4. This Agreement and the Parties' rights and obligations under it will be governed by the laws of the District of Columbia. Nothing in this Agreement will require any unlawful action or inaction on the part of any of the Parties hereto.

5. The Parties hereby agree that the District of Columbia courts will have jurisdiction over the Parties to adjudicate any and all rights of the Parties under this Agreement.

6. If any Party to this Agreement is required to bring an action to enforce this Agreement or to interpret any of its terms, the prevailing party will be entitled to full reimbursement of its costs and expenses in connection therewith from the non-prevailing party, including attorney's fees.

7. Activation of this Agreement is subject to a wire transfer advance of USD 10,000 for the initial monthly retainer and USD 70,000 for the Documentation and Due Diligence items presented in Section 1.A. of this agreement, including the wind study, environmental impact assessment, and social economic impact assessment. All payments shall be net of VAT and all wiring/bank fees, to the following coordinates. Subsequent billings and expenses are to be wire transferred to the same account.

    Bazarian International Financial Associates, LLC
    Suntrust Bank
    Washington, D.C.
    Account: 1000014129604
    ABA: 061000104

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**DESARROLLOS AEROHOTELCO C.A.**

_____    _____
Date           Name: Mr. Walter Stipa
               Title: Owner, President and
                      Authorized Representative of the Company


**BAZARIAN INTERNATIONAL FINANCIAL ASSOCIATES, LLC**

*February 8th 2007*    _____
Date                   Carl J. Bazarian
                       President