**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BAZARIAN INTERNATIONAL<br>FINANCIAL ASSOCIATES, L.L.C.,<br><br>               Plaintiff,<br><br>               v.<br><br>DESARROLLOS AEROHOTELCO, C.A.,<br><br>               Defendant. | Civil Action No. 09-1764 (BAH)<br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The parties to this case are two companies that have collaborated as business partners in the development of a proposed luxury resort on the island of Aruba. The plaintiff, a Florida company, alleges that it has helped to procure a lease for the resort property and has attempted to secure financing for the planned resort. The defendant, a Venezuelan company, is directly developing the resort. The parties have a contract that spells out their respective rights and duties in connection with the resort project. The plaintiff brought this lawsuit seeking a declaratory judgment regarding its right to certain investment banking fees under the parties' contract. The defendant has moved to dismiss the lawsuit on the grounds that, among other things, the request for declaratory judgment is premature. For the reasons explained below, the Court grants the motion to dismiss and dismisses the Complaint without prejudice.[1]

---

[1] Federal jurisdiction in this case is premised upon 28 U.S.C. § 1332. The plaintiff has alleged that this is an action between a citizen of the United States and a citizen of a foreign state and that the amount in controversy exceeds $75,000. *See* Compl. ¶ 3. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391(d), which

## I.       BACKGROUND

Plaintiff Bazarian International Financial Associates, L.L.C. ("BI") is a Florida company

in the business of providing investment banking services.  Compl. ¶ 1.  In 2003, the Government

of Aruba granted BI the option to lease land on Palm Beach, Aruba, in order to establish and

develop a luxury resort (the "Palm Beach Option").  *Id.* ¶ 7.  BI approached Ritz Carlton Hotels

to manage this contemplated resort.  *Id.* ¶ 8.  While BI and Ritz Carlton were negotiating the

possible sale of the Palm Beach Option, Ritz Carlton introduced BI to the defendant Desarrollos

Aerohotelco, C.A., a Venezuelan company in the business of developing and owning hotels.  *Id.*

¶¶ 2, 9.

After several successful renewals of the option, BI and Ritz Carlton were unable to

consummate sale of the Palm Beach Option.  *Id.* ¶ 10.  The option expired by its own terms at the

end of 2006.  *Id.*  The Government of Aruba re-opened bids for the Palm Beach Option and the

defendant retained BI to assist with its efforts to obtain the Palm Beach Option and to arrange for

funding for the resort development project.  *Id.* ¶¶ 11-12.  BI and the defendant entered into an

agreement on February 5, 2007, to memorialize their duties and obligations (the "Agreement").

*Id.* ¶ 12.

The Agreement called for the defendant to pay BI $70,000 upon execution of the

Agreement, which the defendant paid.  *Id.* ¶¶ 14, 21.  The Agreement also called for the

defendant to pay BI $70,000 upon award of the Palm Beach Option.  *Id.* ¶ 15.  In early 2008, the

Government of Aruba did award the option to the defendant, and the defendant accordingly paid

BI the second $70,000 fee.  *Id.* ¶ 26.

---

provides that "[a]n alien may be sued in any district."  *Id.* ¶ 6.  The contract at issue in this case also provides that
disputes will be resolved by courts in the District of Columbia.  *Id.*, Ex. A., ¶ 5.

In addition to specifying that BI would help the defendant acquire the Palm Beach Option, the Agreement also called for BI to "perform exclusive investment banking services" in connection with the development of a luxury hotel and resort on the Palm Beach Option land (the "Project"). *Id.* ¶ 13. Specifically, BI was to "conduct negotiations . . . to secure, on a best efforts basis, financing for the Project." Compl. Ex. A, ¶ 1.D. In exchange for these services, the defendant agreed to pay BI a percentage-based investment-banking fee. *Id.* ¶ 2.C. According to the Complaint, BI is entitled to this fee under the Agreement upon settlement of binding loan or guarantee commitments for the Project obtained directly or indirectly by BI. Compl. ¶ 16. Payment of the fee becomes due "upon the earlier of the first draw-down of funds and/or first infusion of equity capital, provided that financing has been committed to the project as a result of the efforts of BI." *Id.* ¶ 18. The Agreement further entitles BI to this fee "if the financing for the Project is concluded within thirty-six (36) months following the termination of this Agreement from sources introduced to the Project by [BI]." Compl. Ex. A, ¶ 3. Finally, the Agreement also provides that it is to "become part of the relevant loan documents, management agreements, joint-venture agreements, guaranty agreements, bridge loan facilities and Memorandum of Association for [the] Project amongst and between the equity shareholders and lenders." *Id.*

In or about December 2006 and January 2007, BI allegedly introduced the defendant to key executives and decision-makers at two banks—AIB Bank and Scotiabank—to begin the process of obtaining financing for the Project. Compl. ¶¶ 23-24. BI also claims that it worked with the defendant to coordinate the financing process with these two banks. *Id.* ¶ 25.

Ultimately, the defendant chose not to proceed with Scotiabank but continued to pursue financing from AIB Bank. *Id.* ¶ 26. BI claims that it obtained an Indicative Term Sheet from

AIB Bank for the defendant as of March 26, 2007 setting forth a total facility amount of $170 million. *Id.*

At some point thereafter, however, the relationship between BI and the defendant apparently soured. In around June 2009, the defendant allegedly informed BI in writing that it did not intend to pay the investment banking fees specified in the Agreement for Project financing from AIB Bank. *Id.* ¶ 28. BI claims that the defendant asserted that BI had no role in facilitating its relationship with AIB Bank. *Id.*

On September 17, 2009, BI brought this action seeking declaratory judgment as to whether it is entitled to the investment banking fees called for under the Agreement upon the settlement of binding loan or guarantee commitments for the Project from AIB Bank. *Id.* ¶ 33.

At the time of filing the Complaint on September 17, 2009, BI believed that AIB Bank would provide total project financing to the defendant, and anticipated the financing deal closing within sixty days of filing the Complaint. *Id.* ¶ 27. In October 2009, about a month after the filing of the instant Complaint, AIB Bank and various other lenders apparently did issue a financing commitment for the Project (the "AIB Financing Commitment"), although it appears that this loan commitment remains subject to various contingencies and the loan has never settled, closed, or been drawn upon. Def.'s Mot. Dismiss Pl.'s Compl. & Incorporated Mem. ("Def.'s Mem.") at 4. The defendant denies that BI had any involvement in obtaining the AIB Financing Commitment. Ex. A to Def.'s Mem., Declaration of Pedro Vera dated January 26, 2011 ("Vera Decl.") ¶ 9.

On January 19, 2011, the defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[2] Def.'s Mem at 1. This motion is currently before the Court.

## II.      STANDARD OF REVIEW UNDER RULE 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007). "Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court must construe the allegations in the Complaint liberally but "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006); *see also Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, 2010 U.S. Dist. LEXIS 91855, at *5-6 (D.D.C. Sept. 2, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135-136 (D.D.C. 2009); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14

---

[2] The lengthy delay between the filing of the Complaint and the filing of the motion to dismiss is attributable to BI's difficulties in serving the defendant, a Venezuelan corporation. The defendant did not appear in this Court until December 2010. *See* ECF Nos. 8-9.

(D.D.C. 2001).  In evaluating subject matter jurisdiction, the Court, when necessary, may look

outside the Complaint to "undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l*

*Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404,

413 (5th Cir. 1981)); *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C.

2005).

## III.    DISCUSSION

In this case, BI seeks a declaratory judgment regarding its legal entitlements under the

Agreement.  The parties have briefed several substantive legal disputes about the proper

construction of the Agreement's provisions.  Before addressing any substantive issues of

contractual interpretation, however, the Court must address the threshold questions of whether it

has subject matter jurisdiction to entertain BI's claim and whether a declaratory judgment is

appropriate in this case.  As explained below, the Court finds that it lacks subject matter

jurisdiction and that judicial intervention in this case is unwarranted at this time.

### A.  Declaratory Judgment is Not Appropriate Because BI Has Not Alleged a Justiciable Controversy

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Of course, under Article

III of the U.S. Constitution, "[t]he federal courts are powerless to decide any matter unless it

involves a case or controversy."  *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963

(D.C. Cir. 1995); *see also* U.S. Const., art. III, § 2.  The case-or-controversy requirement

prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or

abstract issues.  *Flast v. Cohen*, 392 U.S. 83, 96, 100 (1968); *Westberg*, 759 F. Supp. 2d at 43.

The term "actual controversy" in the language of the Declaratory Judgment Act is "one of emphasis, and not indicative of a different standard from Article III as to what qualifies as a controversy." *Fed. Express Corp.,* 67 F.3d at 964. "To establish that a matter is a 'controversy' rather than an abstract question, a party seeking declaratory relief must 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hoffman v. District of Columbia,* 643 F. Supp. 2d 132, 140 (D.D.C. 2009) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In this case, BI asks the Court for a declaratory judgment confirming that "by virtue of BI's role in introducing Defendant to AIB Bank and efforts to obtain AIB Bank's commitment to provide Project financing, BI is entitled to the investment banking fees called for under the Agreement upon settlement of binding loan and/or guarantee commitments for the Project from AIB Bank." Compl. ¶ 33. BI concedes that the contingency that triggers the defendant's obligation to pay the fees—namely, settlement of binding loan or guarantee commitments from AIB Bank—has not occurred. Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Mem.") at 6.

The defendant contends that BI's Complaint should be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because there is no substantial controversy of sufficient immediacy and reality to warrant a declaratory judgment. Def.'s Mem at 1-2. According to the defendant, BI's claim is "based upon contingent and uncertain future rights . . . that may not occur at all" and "merely calls for the issuance of an advisory opinion." *Id.* at 9.

Despite the fact that the contingency that triggers its right to a fee has not occurred, BI asserts that "the existence of a contingency does not *per se* require a court to find that the

7

issuance of a declaratory judgment would be improper." Pl.'s Mem. at 5 (quoting *Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 670 F. Supp. 424, 429-30 (D.D.C. 1987)). BI is correct. In evaluating whether a declaratory judgment claim that hinges on a contingency presents a justiciable controversy, courts look to the "practical likelihood" that the contingency will occur. *Nat'l R.R. Passenger Corp.*, 670 F. Supp. at 429-30; *see also Am. Exp. Bank Ltd. v. Banco Espanol de Credito*, S.A., 597 F. Supp. 2d 394, 405 (S.D.N.Y. 2009). Ultimately, "the difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Federal Express Corp.,* 67 F.3d at 964 (quoting *Md. Cas. Co.*, 312 U.S. at 273). As explained below, BI has failed to establish a practical likelihood that settlement of binding loan or guarantee commitments for the Project will actually occur. Therefore, the Court must conclude that there is no substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment at this time.

In the Complaint, BI has alleged only that it obtained a non-binding indicative term sheet for the defendant from AIB Bank. Compl. ¶ 26; Def.'s Mem at 4. BI's entitlement to payment under the Agreement is not triggered, however, until the settlement of binding loan or guarantee commitments for the Project. Compl. ¶ 16. Since the Complaint does not even allege that AIB Bank agreed to provide any financing to the Project, the Complaint itself does not sufficiently allege a practical likelihood that BI will become entitled to investment banking fees under the Agreement. The likelihood of BI's ultimate entitlement to an investment banking fee remains highly uncertain and speculative when based merely on the allegation that BI helped the defendant obtain a non-binding term sheet reflecting a potential loan proposal. *See Am. Exp. Bank Ltd.*, 597 F. Supp. 2d at 406 (finding "[d]ismissal pending further developments" to be "the proper course" where claim hinged on "multiple contingencies"). Accordingly, the Complaint

8

itself does not present a substantial controversy of sufficient immediacy and reality to warrant

declaratory relief.

BI's opposition to the motion to dismiss relies on an additional factual allegation not

mentioned in the Complaint – i.e., the existence of the AIB Financing Commitment, which the

defendant apparently entered into on October 26, 2009, approximately one month after the

Complaint was filed. In considering a motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1), the Court may consider undisputed factual information outside the

pleadings. *Herbert*, 974 F.2d at 197. Accordingly, the Court may consider factual information

regarding the AIB Financing Commitment in assessing whether there is subject matter

jurisdiction to entertain BI's declaratory judgment claim. Even upon consideration of the record

facts relating to the AIB Financing Commitment, however, there is still an insufficient basis to

conclude a justiciable controversy exists.[3]

The existence of the AIB Financing Commitment was first disclosed to this Court in the

defendant's motion to dismiss, which was filed on January 31, 2011, approximately a year and a

half after the Complaint was filed. *See* Def.'s Mem. at 4. Both BI and the defendant cite to a

declaration filed by the defendant – the Declaration of Pedro Vera, an officer of the defendant –

---

[3] While the Court may consider materials outside the pleadings in assessing jurisdictional sufficiency, an opposition to a motion to dismiss is not a proper medium for BI to invoke significant factual allegations that go to the merits of BI's claim, such as the allegations regarding the AIB Financing Commitment in this case. *See Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) (noting that a "plaintiff may not amend [its] complaint by the briefs in opposition to a motion to dismiss"); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). BI notes in a footnote in its opposition that the Complaint alleged its belief that AIB Bank would "close on the Project financing within 60 days," and that "[s]hould the Court deem the [AIB Financing Commitment] a matter for allegation in the Complaint . . . BI would respectfully request leave to amend the Complaint." Pl.'s Mem. at 8 n.2. BI, however, has only stated that it would request leave to amend in this footnote and has not filed any motion to amend its Complaint in conformity with the Federal Rules of Civil Procedure and the Local Civil Rules of this District. *See* Local Civil Rule LCvR 7(i) ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."). In addition, as discussed *infra*, it does not appear that the Complaint's allegations predicting a likely closing on the project financing within 60 days were correct. The loan contemplated in the AIB Financing Commitment apparently has never settled, closed, or been drawn upon, and remains subject to various contingencies. *See* Vera Decl. ¶¶ 8-10.

as their source for information regarding the AIB Financing Commitment. *See id.*; Pl.'s Mem. at

6; Vera Decl. The Vera Declaration describes the AIB Financing Commitment as a "binding and

enforceable financing loan facility agreement" entered into on October 26, 2009. Vera Decl. ¶ 8.

The declaration, however, goes on to deny BI's involvement in obtaining the AIB Financing

Commitment and, most importantly for the present inquiry, states that the AIB Financing

Commitment is "still subject to a numerous contingencies and conditions, has not been settled

upon and there has not been any draws made by the borrowers pending a final closing [sic]." *Id.*

¶¶ 9-10. According to the declaration, "[i]t is unknown when, and if, the various contingencies

and conditions of the [AIB] Facility Agreement will be satisfied and no settlement or closing

date is currently scheduled to take place in the near future." *Id. ¶* 10.

While the existence of the AIB Financing Commitment certainly comes closer to

establishing a practical likelihood that the loan settlement will occur, the Court still would not

conclude that settlement is likely due to the facts in the Vera Declaration, upon which both

parties rely. Significantly, the AIB Financing Commitment remains subject to various

contingencies and "no settlement or closing date is currently scheduled to take place in the near

future," despite the fact that the AIB Financing Commitment was entered into in October 2009,

approximately 20 months ago. These facts do not establish that a settlement or closing is

particularly likely to occur.

In addition to the argument based upon the AIB Financing Commitment, BI's opposition

also raises additional legal issues involving a "drop dead fee" to which BI may be entitled "even

if the loan does not settle." Pl.'s Mem. at 6. BI's invocation of the drop dead fee, which is not

mentioned in the Complaint, only serves to underscore the abstract and contingent nature of the

parties' dispute at this time and the corresponding uncertainty regarding the factual and legal claims that must be resolved.

Thus, considering all the relevant facts and claims, the Court concludes that it lacks subject matter jurisdiction because the facts of this case do not present an actual controversy within the meaning of the Declaratory Judgment Act and Article III of the U.S. Constitution. Therefore, the Complaint will be dismissed without prejudice to BI's ability to file a new complaint, if necessary, at an appropriate time in the future.[4]

### B. The Court Would Exercise its Discretion to Abstain from Entertaining the Claim for Declaratory Relief

Even if subject matter jurisdiction did exist, the Court still has broad discretion to abstain from entertaining an action for declaratory judgment. *Patton Boggs, LLP v. Chevron Corp.*, No. 10-cv-01975, 2011 WL 1474866, at \*7 (D.D.C. Apr. 19, 2011) ("District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.") (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). The text of the Declaratory Judgment Act itself, which provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," illustrates the permissive nature of declaratory judgment jurisdiction. 28 U.S.C. § 2201(a) (emphasis added). "In deciding whether to exercise its permissive jurisdiction over declaratory actions, a court may consider 'equitable, prudential, and policy arguments.'" *Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 76 (D.D.C. 2009) (quoting

---

[4] The Court will not dismiss the Complaint with prejudice, as the defendant has urged, because without subject matter jurisdiction, the Court does not have the power to reach the merits of the case and lacks the power to dismiss with prejudice. *Tunica-Biloxi Tribe of La. v. United States*, 655 F. Supp. 2d 62, 65 (D.D.C. 2009) ("[D]ismissals for lack of jurisdiction are not decisions on the merits . . . thus, where a court lacks subject-matter jurisdiction, it also lacks the power to dismiss with prejudice.") (internal citations and quotations omitted).

*MedImmune, Inc.*, 549 U.S. at 136).  While there is no list of dispositive factors for determining when the Court should exercise its discretion to hear a declaratory judgment action, "the D.C. Circuit has listed several relevant considerations to guide the Court's analysis."  *Id.*  Those factors include:

> Whether a declaratory judgment would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Id.* (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 591 n. 4 (D.C. Cir. 1976)).

Based on the facts in this case as they currently stand, the Court would decline to entertain the claim for declaratory judgment.  A declaratory judgment as to the parties' respective rights and obligations under the Agreement is not likely to settle the dispute between the parties because the dispute appears to involve both factual and legal issues.  For example, the parties dispute the circumstances in which BI is legally entitled to fees under the Agreement as well as the factual issue of whether BI had a role in procuring the AIB Financing Commitment.  *See* Vera Decl. ¶ 9; Pl.'s Mem. at 6.  Thus, even if the Court were to enter a declaratory judgment regarding the parties' legal rights and obligations under the Agreement, factual disputes would likely remain.[5]  In addition, as noted above, BI's opposition raises additional legal issues involving a "drop dead fee" to which BI may be entitled if the loan does not settle.  Given the uncertain and shifting nature of BI's allegations and the existence of factual disputes that would not be resolved by a declaratory judgment, the Court would not exercise its discretion to entertain a declaratory judgment claim in this case at this time.

---

[5] The Court is cognizant of the legal dispute between the parties involving Section 2.B of the Agreement regarding whether BI had to obtain the binding loan or guarantee agreements within eight weeks from the date of the Agreement, i.e., by April 2, 2007.  Pl.'s Mem. at 6; Def.'s Reply Supp. Mot. Dismiss. Pl.'s Compl. At 2-3.  The Court need not resolve this dispute, however, given the Court's conclusion that it lacks subject matter jurisdiction.

Consideration of the purposes of the Declaratory Judgment Act also favors abstention.

For example, the purposes of the Declaratory Judgment Act include "minimiz[ing] the danger of

avoidable loss and the unnecessary accrual of damages and [affording] one threatened with

liability an early adjudication without waiting until an adversary should see fit to begin an action

after the damage has accrued." 10B CHARLES WRIGHT AND ALAN MILLER, FED. PRAC. & PROC.

CIV., § 2751 (3d ed.). The purpose of minimizing avoidable loss and damages is not implicated

here because BI is not suffering any ongoing harm from the dispute and the amount of damages

– which is fixed at two percent of the loan value – will not be minimized by early adjudication.

Nor is BI a party threatened with liability whom a declaratory judgment might relieve "from the

Damoclean threat of impending litigation which a harassing adversary might brandish, while

initiating suit at his leisure—or never." *Id.* (quotation omitted).

With respect to avoiding damages, BI does argue that because the Agreement calls for its

entitlement to fees to be made a part of the loan documents, BI's "ability to be paid from the loan

proceeds will [be] lost" if BI "has to wait until after settlement and then obtain a breach of

contract judgment." Pl.'s Mem. at 7 n.1. This argument is unavailing, however. The Court fails

to comprehend how the defendant's purported pre-existing legal obligation to pay BI a two-

percent fee under the Agreement would be affected by the mention of this fee arrangement in

subsequent loan documents. Additionally, to the extent BI argues that a declaratory judgment

"would enable and compel the . . . payment of [the investment banking] fees as part of the loan

closing," *id.*, it is unclear how this claim harmonizes with the Complaint's assertion that payment

of the fees becomes due "upon the earlier of the first draw-down of funds and/or first infusion of

equity capital.'" Compl. ¶ 18. In any event, the Court expresses no opinion on whether BI will

ultimately need to seek a breach of contract judgment or whether BI might successfully seek a declaratory judgment at a more appropriate time in the future.

At this time, however, the Court would exercise its discretion to abstain from deciding BI's declaratory judgment claim.

## IV.    CONCLUSION

As explained above, the Court lacks subject matter jurisdiction to decide BI's declaratory judgment claim because the facts of this case do not present an actual controversy within the meaning of the Declaratory Judgment Act and Article III of the U.S. Constitution.  Even if the Court did not lack subject matter jurisdiction, the Court would still exercise its discretion to abstain from deciding BI's declaratory judgment claim at this time.  Accordingly, the Complaint will be dismissed without prejudice to BI's ability to file a new complaint, if necessary, at an appropriate time in the future.


DATED: June 22, 2011                          /s/  *Beryl A. Howell*
                                                   BERYL A. HOWELL
                                                   United States District Judge